Harold M. Jaffe (Calif. State Bar #57397)
**LAW OFFICES OF HAROLD M. JAFFE**
3521 Grand Avenue
Oakland, CA 94610
Tel: (510) 452-2610
Fax: (510) 452-9125
Email: hmjaffe@gmail.com

Attorney for Plaintiff and
Putative Class

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN McSHANNOCK, as Executrix of the Estate of Patricia Blaskower, on behalf of the Estate of Patricia Blaskower and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JP MORGAN CHASE BANK N.A. dba CHASE BANK,<br><br>Defendant.<br>_____/ | CASE NO. _____<br><br>COMPLAINT - CLASS ACTION FOR:<br><br>1)    **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. B&P CODE §17200, ET SEQ.);**<br><br>2)    **BREACH OF CONTRACT.**<br><br>**DEMAND FOR JURY TRIAL** |

### I. INTRODUCTION AND STATEMENT OF FACTS

1.     This consumer fraud class action is based on Defendant JP Morgan Chase Bank, N.A., dba Chase Bank's ("Defendant" or "Chase") direct, per se violation of California law requiring a mortgage lender making loans secured by real property located in California, to pay the borrower a minimum of 2% simple interest for money received in advance from the borrower for tax and insurance. Chase and its predecessor-in-interest Washington Mutual Bank("Washington Mutual") require a large percentage of their borrowers to maintain an impound account in connection with their mortgage. Chase collects in advance from their borrowers' money to pay the property tax and insurance on the property, and places it in an escrow account. First Washington Mutual and then its

successor-in-interest Chase then directly pays the property tax and insurance from the escrow account when the property taxes and insurance become due. These additional and significant deposits made by the borrower/mortgagor to maintain the escrow account are the borrowers' funds in which mortgage lenders such as Chase and its predecessor in interest Washington Mutual have use of the funds for investment, and therefore, California law requires that the mortgage lenders, including Chase, pay at least 2% interest per annum on the monies to the borrowers. California Civil Code § 2954.8 mandates that:

> "(a) **Every financial institution that makes loans upon the security of real property** containing only a one- to four-family residence and located in this state or purchases obligations secured by such property and that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at lest 2 percent simple interest per annum. Such interest shall be credited to the borrower's account annually or upon termination of such account, whichever is earlier.
>
> "(b) **No financial institution subject to the provisions of this section shall impose any fee or charge** in connection with the maintenance or disbursement of money received in advance for the payment of taxes and assessments on real property securing loans made by such financial institution, or for the payment of insurance, or for other purposes relating to such real property, that **will result in an interest rate of less than 2 percent per annum being paid on the moneys so received.**"

2. However, Chase systematically and uniformly has adopted a policy to violate California law by refusing to pay the mandated interest to borrowers, thereby enriching itself on the free use of borrowers' escrow funds that Defendant earns interest on. This decision and policy is at odds with other mortgage lenders, such as Wells Fargo Bank, N.A.--the largest or one of the largest mortgage originators in the United States--which does comply with California law and pays interest on impounded escrow money.

3. For many years, some national banks have relied on the preemptive effect of regulations of the Office of Thrift Supervision, set forth in 12 C.F.R. § 560.2(b)(6), and the Office of the Comptroller of Currency, set forth in 12 C.F.R. § 34.4(a)(6), which concluded generally that state laws were preempted for a number of banking devices, including "escrow accounts, impound accounts, and similar accounts."

4. Congress has mandated that "[i]f proscribed by applicable State or Federal law, each

creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as proscribed by that State or Federal law." 15 U.S.C. § 1639d(g)(3). This provision makes explicit that the intent of Congress was to permit states to enact and enforce laws that require mortgage lenders to pay interest on impound accounts.

5. The aforementioned requirement is in line with regulations of the United States Department of Housing and Urban Development ("HUD"), which state that:

> "[w]here escrow funds are invested, the net income derived from this investment must be passed on to the mortgagor in the form of interest . . . in compliance with any state and/or regulatory agency requirements governing the handling and/or payment of interest earned on a mortgagor's escrow account."

HUD Handbook 4330.1, Rev- 5, § 2-5. As the act does not preempt state laws that afford "greater protection" than federal finance laws (12 U.S.C. § 5551(a)), Chase is required to comply with California law.

6. Plaintiff's predecessor in interest Patricia Blaskower ("Blaskower") entered into mortgage contracts with Defendant's predecessor-in-interest Washington Mutual, wherein based on the express terms of the contract, she was required to deposit funds into an escrow account, and Washington Mutual and its successor-in-interest Chase would be required to pay interest on the escrow, if applicable law so required. The boilerplate, adhesive and non-negotiable terms of the mortgage agreement drafted by Washington Mutual included the following:

**"3. FUNDS FOR ESCROW ITEMS**

"Unless an agreement is made in writing or applicable law requires interest to be paid on the funds, lender shall not be required to pay borrower any interest or earnings on the funds."

**"16. GOVERNING LAWS; SEVERABILITY; RULES OF CONSTRUCTION**

""This security instrument shall be governed by Federal law, and law of the jurisdiction in which the property is located. All rights and obligations contained in this security instrument are subject to any requirements and limitations of applicable law.

. . .

" In the event that any provision or clause of this security instrument . . . conflicts with applicable law, such conflict shall not affect other provisions of this security instrument. Further note which can be given effect without the conflicting provision."

7. Blaskower continuously deposited funds into the escrow account, which were due

every month in an amount that was often more than $700. Neither Blaskower nor her estate has ever received the interest accrued on her funds. Therefore, Plaintiff, for herself and others similarly situated (i.e., the members of the Plaintiff Class described and defined within this complaint), brings this action for restitution and reimbursement, equitable injunctive relief and declaratory relief pursuant to the California Unfair Competition Law ("UCL") B&P Code § 17200, et seq., and breach of contract. For this purpose, Plaintiff herein alleges as follows:

## II.   JURISDICTION AND VENUE

8. This Court has personal jurisdiction over the Defendant, because Defendant has conducted and continues to conduct business in the State of California and because Defendant has committed the acts or omissions complained of herein in the State of California.

9. Venue as to Defendant Chase is proper in this judicial district. Chase is a large mortgage lender operating in this district, and is the consumer banking subsidiary of JP Morgan Chase & Co. Chase has branches throughout this district, and many of Defendant's acts, and that of its predecessor Washington Mutual complained of herein occurred in this district.

10. In or about September 2008, Washington Mutual was shut down by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation was named receiver. At the same time, Chase acquired the assets of Washington Mutual and Chase took over more than 2000 of Washington Mutual's retail branches, over $188 billion in deposits, and Washington Mutual's $118.9 billion single family loan portfolio, including that of Blaskower.

## III.   THE PARTIES

11. Plaintiff McShannock is a resident and citizen of the City of Santa Rosa, California, as was Blaskower and is the executrix of Blaskower's estate, who died on or about October 2, 2017. In or about 2007, Blaskower purchased a home in Santa Rosa, and simultaneously entered into a loan agreement with Washington Mutual, prior to Washington Mutual's purchase by Chase. Since Blaskower entered into the first mortgage contract, she has been required to make escrow payments to first Washington Mutual and then to Chase, in addition to the regular monthly mortgage payment, for the pre-payment of property tax and insurance on the property. First Washington Mutual and then Chase had use of these funds at all times between when received from Blaskower to the time

Case 3:18-cv-01873-EMC   Document 1   Filed 03/27/18   Page 5 of 11

when Washington Mutual and then Chase made tax and insurance payments on Plaintiff's property.

12. However, Blaskower nor her executrix McShannock has ever received from Chase or Washington Mutual interest on the moneys pre-paid by Blaskower and held by Defendant for the payment of taxes and insurance. The agreement(s) drafted by Washington Mutual and Chase had Plaintiff deposit funds into an escrow account. While the agreement(s) drafted by Washington Mutual in the originating mortgage required the creation of escrow accounts and that Plaintiff deposit funds into these escrow accounts, the original mortgage provided that the handling of interest would be pursuant to applicable state and federal laws, stating that no interest would be payable unless required by applicable law. California Civil Code § 2954.8 is the applicable state law. Therefore, Chase is obligated to comply with Civil Code § 2954.8, as discussed above, in performing its obligations under the agreement, and therefore pursuant to the contract of its predecessor-in-interest, Washington Mutual, as well as the specific California law, must pay interest on Plaintiff's impound escrow account.

13. Defendant Chase is the consumer banking subsidiary of JP Morgan Chase & Co. and is the largest U.S. based bank in terms of assets as of December 31, 2017; and a large mortgage lender not only in California, but throughout the country. Chase is incorporated in the State of Ohio, and has its principal place of business in and is a citizen of New York. Through numerous branches throughout California and the United States, Chase and its predecessor-in-interest Washington Mutual entered into mortgage agreements with customers for finance of their homes, and upon information and belief requires a large percentage of its customers in California to maintain escrow accounts, into which customers deposit significant funds for the payment of property tax and insurance on the property.

14. However, Chase and prior to Chase its predecessor-in-interest Washington Mutual systematically and uniformly failed and continues to fail to pay interest on those funds in direct, per se violation of California and Federal law.

## IV. CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action on her own behalf, and on behalf of the following classes, pursuant to F.R.C.P. 23(a), 23(b)(2) and/or 23(b)(3).

5
CLASS ACTION COMPLAINT

16. Plaintiff proposes a California class defined as follows:

"All mortgage loan customers of Chase (or its subsidiaries), whose mortgage loan is for a one- to four family residence located in California, and who paid Chase money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property and did not receive interest on the amount held by Chase . . . ."

Excluded from the above class is any entity in which Defendant has a controlling interest, and the officers or directors of Defendant.

17. Plaintiff reserves the right under Rule 23 to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitations to particular issues, based on the results of discovery.

18. **Numerosity of the Class** - The members of the Class are so numerous that their individual joinder is impracticable. The number of mortgages held by Defendant is in the tens of thousands or more throughout California, which is a reflection of the number of putative Class members in this action. Inasmuch as the Class members may be identified through business records regularly maintained by Defendant and its employees and agents and through the media, the number and identities of Class members can be ascertained. Members of the Class can be notified of the pending action by email, mail and supplemented by published notice if necessary.

19. **Existence and Predominance of Common Questions of Fact and Law.** There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members. These common and legal and factual issues include, but are not limited to:

    a. Whether Defendant has systematically engaged in conduct that is per se a violation of state and federal laws with respect to the disbursement of the interest accrued on escrow accounts back to the customers;

    b. Whether Defendant's conduct breached the mortgage agreement with customers;

    c. Whether Defendant must provide damages, restitution and/or reimbursement to borrowers in the amount of unpaid interest on funds held in impound escrow accounts based on the causes of action asserted herein; and

        d.     Whether injunctive relief is appropriate to prohibit Defendant from engaging in this conduct in the future.

    20.    **Typicality**. The claims of the representative plaintiff are typical of the claims of each member of the Class. Plaintiff, like all members of the Class, has sustained damages arising from Chase's violation of the laws, as alleged herein. The representative Plaintiff and members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct engaged in by Defendant Chase.

    21.    **Adequacy.** The representative plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel who is experienced in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make Class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

    22.    **Predominance and Superiority**. This suit may be maintained as a class action, because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. By contrast, the class action device prevents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed, because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

    23.    The Class Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Defendant's own business

records and electronic media can be utilized for the contemplated notices. To the extent any further notices may be required, the Class Plaintiff would contemplate the use of additional media and/or mailings.

24. In addition to meeting the prerequisites of a class action, this action is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of a separate actions by individual members of the Class will create the risk of:

i. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class; or

ii. Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c. Common questions of law and fact exist as to members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

i. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii. The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii. The desirability or undesirability of concentrating the litigation of the claims in the particular forum; or

iv. the difficulties likely to be encountered in the management of a Class

1 action.

## FIRST CAUSE OF ACTION
(Violations of California Business and Professions Code, § 17200, et seq., Unfair Business Practices Act)

25. Plaintiff incorporates paragraphs 1 through 24 above as if set forth in full herein.

26. The UCL defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The UCL also provides for injunctive relief, restitution, and disgorgement of profits for violations.

27. Defendant's unlawful, unfair and fraudulent business acts and practices are described throughout this Complaint and include, but are not limited to the following: Defendant has and continues to engage in a practice of failing to pay interest to its borrowers on impound escrow accounts as required by California law, thereby illegally profiting from the use of interest free funds tens of thousands of mortgage accounts.

28. The aforementioned conduct is a *per se* violation of California Civil Code § 2954.8 and 15 U.S.C. § 1639d(g), and contravenes the declared legislative policy espoused in the HUD regulations as set forth in HUD Handbook 4330.1, Rev-5, § 2-5.

29. Plaintiff and the Class members, and each of them, have been damaged by said practices pursuant to California Business & Professions Code §§ 17200 and 17203, Plaintiff on behalf of herself and all others similarly situated, seek relief as set forth below.

## SECOND CAUSE OF ACTION
(Breach of Contract)

30. Plaintiff incorporates paragraphs 1 through 29 above as if set forth in full herein.

31. Chase's predecessor-in-interest Washington Mutual was bound by the Deed of Trust, dated April 19, 2007, and recorded April 25, 2007, as Document No. 2007-046919 Official Records, Sonoma County Recorder. Patricia Blaskower and later Plaintiff in her role as executrix


of the Will of Patricia Blaskower and all similarly situated did all or substantially all, of the things that the agreements between Blaskower and Defendant required them to do.

32. Meanwhile, Defendant failed to perform the express terms of the agreement that stated Defendant would comply with applicable state and federal law, which included the state and federal law that mandated that Defendant pay interest to borrowers for funds collected on an impound escrow account. Therefore, Defendant breached an express term of the agreement.

33. As a result, Plaintiff and members of the putative Class have been harmed by Defendant's breach of contract.

## PRAYER FOR RELIEF

W H E R E F O R E, Plaintiff, on behalf of herself and members of the Class demands judgment against Defendants and each of them as follows:

1. An order certifying that the action may be maintained as a class action as defined herein and appointing Plaintiff and her counsel of record to represent the defined Class;

2. An order enjoining Defendant under California Business & Professions Code § 17203:

   a. To cease such acts and practices declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statute, or regulations, or constituting unfair competition;

   b. To disgorge all profits and compensation improperly obtained by Defendant as a result of such acts and practices declared by this court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations or constituting unfair competition; and

3. For damages under the cause of action for breach of contract;

4. For reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, and other statutes that may be applicable, as well as that provided by the contracts;

5. For prejudgment interest to the extent allowed by law;

6. For costs of suit incurred herein;

7. For such other and further relief as this Court deems just and proper.

Dated: March 27, 2018                     /s/ Harold M. Jaffe

HAROLD M. JAFFE
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff, and all others similarly situated hereby demand a trial by jury.

Dated: March 27, 2018                     /s/ Harold M. Jaffe

HAROLD M. JAFFE
Attorney for Plaintiff