UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN MCSHANNOCK, et al.,<br>Plaintiffs,<br>v.<br>JP MORGAN CHASE BANK N.A.,<br>Defendant. | Case No. 18-cv-01873-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 38 |

Plaintiffs Monica Chandler, Susan McShannock, and Mohamed Meky (collectively "Plaintiffs") filed suit against JPMorgan Chase Bank ("Chase") on behalf of a putative class. Plaintiffs assert claims under the California Unfair Competition Law, Ca. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), based on Chase's alleged violation of a California law requiring mortgage lenders to pay interest to mortgagors on funds held in escrow accounts for residential mortgages. Currently pending before the Court is Chase's motion to dismiss or, in the alternative, stay the case. Docket No. 38 ("Mot."). For the reasons discussed below, the Court **DENIES** the motion to dismiss and **DENIES as moot** the motion to stay.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Consolidated Class Action Complaint alleges the following. Plaintiffs took out mortgage-secured loans from Washington Mutual Bank ("WaMu"), a federal savings bank, between 2005 and the end of 2007. Docket No. 37 (Consolidated Class Action Complaint, hereinafter "Con. Compl.") ¶¶ 5, 9, 13. When WaMu failed in 2008, its assets, including Plaintiffs' mortgages, were acquired by Chase via the Federal Deposit Insurance Corporation ("FDIC"). *Id.* ¶ 5; Mot. at 1.

The mortgage agreements at issue required Plaintiffs to make payments into escrow

accounts held by the lender, in order to cover any potential taxes and assessments, leasehold payments, and insurance premiums on the property. Con. Compl. ¶¶ 6, 10, 14. Plaintiffs have each made payments into the escrow accounts as required, but have never received any interest on the escrow funds from Chase. *Id.* ¶¶ 7, 11, 14. The mortgage agreement contains a provision addressing interest on escrow accounts:

> Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds [in the escrow account], Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.

Docket No. 38-2, Exhs. A–F § 3.

Plaintiffs assert that Chase's failure to pay escrow interest on their mortgage accounts violates California Civil Code § 2954.8 and 15 U.S.C. § 1639d(g). Con. Compl. ¶¶ 35–37. According to Plaintiffs, these violations constitute "unlawful" conduct within the meaning of the UCL. They also assert that Chase's alleged conduct violates the "unfair" prong of the UCL. *Id.* ¶¶ 38–40.

Plaintiff McShannock and Plaintiff Chandler initially filed separate class action suits against Chase asserting the same underlying claims. *See* Docket No. 19 (Motion to Relate Case). The parties stipulated to consolidate the two cases. *See* Docket No. 33. In the ensuing Consolidated Complaint, Plaintiffs proposed the following class for certification pursuant to Federal Rule of Civil Procedure 23:

> All mortgage loan customers of Chase (or its subsidiaries), whose mortgage loan is for a one-to-four family residence located in California, and who paid Chase money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, and to whom Chase failed to pay interest as required by Cal. Civ. Code § 2954.8(a). Excluded from the above Class is any entity in which Chase has a controlling interest, and officers or directors of Chase. The judge assigned to this case and the judge's staff members are also excluded from the Class.

Con. Compl. ¶ 26.

Chase now moves to dismiss under Rule 12(b)(6) on two bases: first, that Plaintiffs failed to comply with the provisions in their mortgage contracts requiring them to provide Chase with

2

1  notice and an opportunity to cure alleged misconduct before bringing a judicial action; and second,

2  that Plaintiffs' state law claims are preempted by the Home Owners' Loan Act. In the alternative,

3  Chase seeks to stay the case pending the resolution of *Lusnak v. Bank of America, N.A.*, which

4  concerns whether California's mortgage escrow law is preempted by the National Banking Act.

5  883 F.3d 1185 (9th Cir. 2018), *petition for cert. filed*, (U.S. Aug. 14, 2018) (No. 18-212).

## II.  DISCUSSION

A.  Legal Standard

For a plaintiff to survive a Rule 12(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), her factual allegations "must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014). In other words, the complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'" *Id.*

The Ninth Circuit has outlined a two-step process for evaluating pleadings against this standard. "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Levitt*, 765 F.3d at 1135 (citations omitted).

B.  Notice and Cure Provisions

Chase first argues that Plaintiffs' Deeds of Trust contain provisions that require them to give Chase notice and an opportunity to cure any alleged wrongdoing, including actions relating to escrow accounts, before seeking judicial remedies. Mot. at 4. Under the terms of the notice and

3

cure provision:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Docket No. 38-2, Exhs. A–F § 20. The Deed also provides that "[t]he covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender." *Id.*, Exhs. A–F § 13.

The Consolidated Complaint does not contain any allegation that Plaintiffs have complied with the notice and cure provisions in their Deeds of Trust. Plaintiffs state in their opposition to the motion to dismiss that McShannock and Meky sent notices of dispute to Chase *after* Chase moved to dismiss the original complaint and before Plaintiffs filed the Consolidated Complaint. *Id.* at 5. Plaintiffs contend Meky gave Chase notice "on behalf of the class *before* he filed his complaint" because he was not a part of the original action. *Id.* (emphasis in original). According to Plaintiffs, "Chase rejected these opportunities to cure the breach." *Id.*

As Chase points out, however, Plaintiffs cannot fix their pleading deficiencies by alleging new facts in their opposition brief. "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

Moreover, even if the Court were to accept Plaintiffs' assertion that they provided notice to Chase after they filed the initial complaint, their actions would not satisfy the notice and cure provision. "If the Notice Provision has any legitimate purpose, it is to promote the resolution of contractual disputes without the expense of litigation—'compliance' after litigation has been initiated is no compliance at all." *Gerber v. First Horizon Home Loans Corp.*, No. 05–1554P, 2006 WL 581082, at *2 (W.D. Wash. Mar. 8, 2006) (rejecting plaintiff's argument "that his post-

4

lawsuit notice to Defendant is somehow 'substantial compliance' with the provision"); *Kim v. Shellpoint Partners, LLC*, No. 15CV611-LAB (BLM), 2016 WL 1241541, at *6 (S.D. Cal. Mar. 30, 2016) (explaining that accepting plaintiff's notice to defendant "during the pendency of this action" would "gut the 'notice and cure' provision, the purpose of which is to give each party an opportunity to cure problems and prevent the need for litigation"). McShannock's post-suit notice is therefore ineffective.

Nor would the purported notice given by Meky "on behalf of the class" suffice, even though he joined as a plaintiff after the original complaint was filed. The notice and cure provision in Plaintiffs' Deeds of Trust specifies that no borrower "may commence, *join, or be joined* to any judicial action (as either an individual litigant or *the member of a class*)" prior to giving notice. Docket No. 38-2, Exhs. A–F § 20 (emphases added). The notice provision thus applies to borrowers like Meky who "join" the suit after it is initiated.

The question therefore becomes whether Plaintiffs' failure to comply with the notice and cure provisions warrants dismissal of their suit. Chase contends that such failure is "fatal" to their claims. Mot. at 4. Plaintiffs respond that their "claims are not predicated on any violation of the mortgage contract, but only on violations of § 2954.8[1] and the UCL, and thus the notice and cure provision does not apply. Docket No. 41 ("Opp.") at 4.

As an initial matter, Plaintiffs' threshold argument that their "statutory rights under Civil Code section 2954.8(a) and the UCL . . . are unwaivable as a matter of public policy" is without merit. Opp. at 3. Providing notice to Chase pursuant to the notice and cure provision does not

---

[1] Section 2954.8(a) of the California Civil Code provides that:

> Every financial institution that makes loans upon the security of real property containing only a one- to four-family residence and located in this state or purchases obligations secured by such property and that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at least 2 percent simple interest per annum. Such interest shall be credited to the borrower's account annually or upon termination of such account, whichever is earlier.

5

foreclose Plaintiffs from vindicating their statutory rights. "The purpose of this provision is 'to give the allegedly breaching party an opportunity to cure its breach.'" *Sigwart v. U.S. Bank*, 713 F. App'x 535, 537 (9th Cir. 2017) (quoting *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1253 (D. Or. 2012)). If Chase had been put on notice of its breach and failed to take corrective action, Plaintiffs could then bring suit under § 2954.8(a) and the UCL. Plaintiffs make no showing that providing such notice would be so burdensome as to impede enforcement of their statutory rights. Requiring compliance with the notice and cure provision therefore is not the equivalent of a coerced waiver of those statutory rights.

Turning to the merits of the notice and cure question, courts have reached differing conclusions. In *Giotta v. Ocwen Financial Corporation*, the plaintiffs sued the defendant companies for allegedly working in concert to charge inflated fees for servicing mortgage loans that were billed through to the homeowners. No. 15-CV-00620-BLF, 2016 WL 4447150, at *1 (N.D. Cal. Aug. 24, 2016). The plaintiffs' Deeds of Trust contained notice and trust provisions identical in wording to those in this case, and the plaintiffs did not allege that they complied with the provisions before suing the defendants. *Id.* at *3. The district court in *Giotta* concluded that all of the plaintiffs' claims—including those under the UCL—"fall squarely within the ambit of the notice-and-cure provision" because they all "arise from the property inspections and BPOs obtained by [a defendant] and charged to Plaintiffs pursuant to the terms of the Deed of Trust." *Id.* In an unpublished, non-precedential memorandum, the Ninth Circuit affirmed, writing that the suit was a 'judicial action ... that *arises from* the other party's actions *pursuant to* this Security Instrument'" because "the Deed of Trust authorized property inspections and valuations to protect the Lender's interest in the property and to pass the fees for those services on to the borrower." *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017) (emphases in original).

At least three other cases have reached the opposite conclusion. In *Gerber v. First Horizon Home Loans Corporation*, the plaintiff alleged that his mortgage lender charged him a fee not included in his mortgage agreement, and brought causes of action for both breach of contract and violations of the Washington Consumer Protection Act. No. 05–1554P, 2006 WL 581082, at *1

6

(W.D. Wash. Mar. 8, 2006). The court distinguished the causes of action. It dismissed the breach of contract claim for failure to satisfy the notice provision, since the very purpose of the provision was "to promote the resolution of contractual disputes without the expense of litigation." *Id.* at *2. In contrast, it found that the state statutory cause of action "involves allegations of deceptive business practices, clearly exists independent of any contract between the parties," and was thus not barred by the plaintiff's failure to give notice. *Id.* at *3. Next, the court in in *Kim v. Shellpoint Partners, LLC*, held that the notice and cure provision in the plaintiff's deed of trust did not require dismissal of plaintiff's claims under the UCL and the California Homeowners' Bill of Rights because those claims, which challenged mortgage servicing fees, "arise under statute, not the agreement." No. 15CV611-LAB (BLM), 2016 WL 1241541, at *7 (S.D. Cal. Mar. 30, 2016). And in *Beyer v. Countrywide Home Loans Servicing LP*, the court considered claims similar to those in *Gerber* and concluded the plaintiff's "unjust enrichment and [Washington Consumer Protection Act] claims exist independently of the parties' mortgage contract" and therefore are not foreclosed by his failure to notify the defendant. No. C07-1512MJP, 2008 WL 1791506, at *3 (W.D. Wash. Apr. 18, 2008), *aff'd*, 359 F. App'x 701 (9th Cir. 2009).[2]

In *Gerber*, *Kim*, and *Beyer*, the plaintiffs were challenging fees that were allegedly not specified in their loan agreements, so the mortgage lenders' attempts to impose the fees were clearly not "actions pursuant to" the agreements. *See Gerber*, 2006 WL 581082, at *1; *Kim*, 2016 WL 1241541, at *7; *Beyer*, 2008 WL 1791506, at *3. While the nature of Plaintiffs' claim in this case is somewhat more complicated, the Court agrees with Plaintiffs that they were not required to

---

[2] The other cases cited by Plaintiffs are distinguishable because they involved claims under the federal Truth in Lending Act ("TILA"). *See* Opp. at 3–4 (citing *Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698 (S.D.N.Y. 2013); *Schwartz v. Comenity Capital Bank*, No. 13 CIV. 4869 JGK, 2015 WL 410321 (S.D.N.Y. Feb. 2, 2015)). The central purpose of TILA is "to assure a meaningful disclosure of credit terms" to a consumer before he commits to a contract. 15 U.S.C. § 1601(a). In light of this purpose, "enforcement of the notice and cure provision . . . would essentially amount to a waiver of TILA's initial account-opening disclosure requirements, because Defendant would be able to provide deficient initial disclosures and remedy them only after the contract was signed." *Taub*, 950 F. Supp. 2d at 702. Providing notice and an opportunity to cure in the context of nonpayment of interest on escrow accounts does not wholly undermine the purpose of § 2954.8 and the UCL in the same way.

7

give notice to Chase.

Per the notice and cure provision, Plaintiffs are obligated to give notice in two circumstances: first, where their grievance "arises from" Chase's "actions pursuant to" the Deeds of Trust, and second, where they "allege[] that [Chase] has breached any provision of, or any duty owed by reason of," the Deeds of Trust. Docket No. 38-2, Exhs. A–F § 20. As to the first prong, the Deeds of Trust provide that, "Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds [in the escrow account], Lender shall not be required to pay Borrower any interest or earnings on the funds." Docket No. 38-2, Exhs. A–F § 3. The "Applicable Law" here is § 2954.8, which requires lenders to pay two percent interest on escrow funds. Cal. Civ. Code § 2954.8(a). The Deeds of Trust, by incorporating § 2954.8, arguably require Chase to pay escrow interest to Plaintiffs. Thus, there is a fair argument that Chase's alleged non-payment of escrow interest is not "pursuant to" the Deeds of Trust, and Plaintiffs were therefore not required to give notice before bringing this suit.

As to the second prong, Plaintiffs allege that Chase is not complying with its duty to pay escrow interest under § 2954.8 and the UCL. This statutory duty "exists independent of any contract between the parties." *Gerber*, 2006 WL 581082, at *3. It is therefore not "owed by reason of" the Deeds of Trust. This conclusion comports with the purpose of the notice and cure provision, which is to give the defendant an opportunity to correct conduct that is violating the terms of a contract. As in *Gerber*, *Kim*, and *Beyer*, the Plaintiffs' claim has an independent basis in statute, not the contract.

Further, to the extent there is any ambiguity regarding the scope of the notice and cure provision, it must be construed against Chase, the drafter of the contract. *See* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."). To deprive Plaintiffs of recourse to their statutory rights based on an ambiguous contractual provision would also frustrate the consumer protection purposes of those statutes.

Accordingly, Plaintiffs' failure to comply with the notice and cure provisions does not foreclose their claims.

8

C. HOLA Preemption

Plaintiffs' UCL claim is premised on the allegation that Chase's failure to pay interest on Plaintiffs' mortgage escrow accounts violates California Civil Code § 2954.8 and 15 U.S.C. § 1639d(g), a provision of the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") governing the administration of mandatory escrow accounts. Under the Ninth Circuit's *Lusnak* ruling, however, Plaintiffs cannot rely on 15 U.S.C. § 1639d(g), because their mortgages all predate the enactment of § 1639d(g). *See Lusnak*, 883 F.3d at 1197 ("Congress intended the detailed requirements in section 1639d to apply to accounts established pursuant to that section after it took effect in 2013."). Plaintiffs must therefore rest their UCL claims upon § 2954.8.

Section 2954.8(a) "requires financial institutions [making mortgage loans] to pay borrowers at least two percent annual interest on the funds held in the borrowers' escrow accounts." *Lusnak*, 883 F.3d at 1188. The Ninth Circuit recently ruled that national banks are "required to follow" § 2954.8(a) because the National Banking Act ("NBA") does not preempt state escrow interest laws. *Id.* at 1196–97. Chase, however, contends that § 2954.8(a) is preempted by the Home Owners' Loan Act ("HOLA") because the loan was originated by WaMu, a federal savings bank governed by HOLA, not the NBA. *See* Mot. at 6.

"HOLA empowered the regulatory body, which became the [Office of Thrift Supervision ("OTS")], to authorize the creation of federal savings and loan associations, to regulate them, and, by its regulations, to preempt conflicting state law." *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 971 (9th Cir. 2017). By their terms, the regulations promulgated by OTS "occup[y] the entire field of lending regulation for federal savings associations," 12 C.F.R. § 560.2(a), and preempt "state laws purporting to impose requirements regarding . . . [e]scrow accounts," 12 C.F.R. § 560.2(b)(6). Chase argues that Plaintiffs' loans fall within the coverage of HOLA because they originated with WaMu, a federal savings bank. *See* Mot. at 6. Therefore, Chase reasons, California's escrow interest law is preempted by 12 C.F.R. § 560 with respect to Plaintiffs' loans, and Chase does not have to pay Plaintiffs the escrow interest mandated by § 2954.8(a). Plaintiffs disagree, arguing that their complaint pertains only to Chase's non-

9

payment of escrow interest *after* it acquired WaMu's assets, and "HOLA preemption does not apply to conduct of a national bank that acquires a loan originated by a federal savings bank." Opp. at 7–8.

"Whether, and to what extent, HOLA applies to claims against a national bank when that bank has acquired a loan executed by a federal savings association is an open question" in the Ninth Circuit. *Campidoglio*, 870 F.3d at 970–71. Chase cites a line of cases supporting its assertion that HOLA extends to loans held by national banks which originated with federal savings banks. *See, e.g.*, *Poyorena v. Wells Fargo Bank, N.A.*, No. CV 14–683 GAF (Ex), 2014 U.S. Dist. LEXIS 49319, at *16 (C.D. Cal. Apr. 3, 2014); *Nguyen v. JP Morgan Chase Bank N.A.*, No. 12-CV-04183, 2013 WL 2146606, at *6 (N.D. Cal. May 15, 2013); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010). Plaintiffs counter with a line of cases maintaining the opposite position. *See, e.g.*, *Davis v. Wells Fargo, N.A.*, No. 2:16-CV-00890 JAM AC, 2016 WL 7116681, at *7 (E.D. Cal. Dec. 6, 2016), *report and recommendation adopted*, No. 2:16-CV-00890-JAM-AC, 2017 WL 729541 (E.D. Cal. Feb. 23, 2017); *Pimentel v. Wells Fargo, N.A.*, No. 14-CV-05004-EDL, 2015 WL 2184305, at *3 (N.D. Cal. May 7, 2015); *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 995 (N.D. Cal. 2014). The divergence between the parties reflects "a growing divide in the district courts' treatment of this issue," as Judge Davila delineated in *Kenery v. Wells Fargo Bank, N.A.*:

> [D]istrict courts have taken three distinct positions on this issue. The first position is [that HOLA preemption applies to all conduct relating to a loan originating with a federal savings bank]. The second position . . . is that HOLA preemption does not apply to . . . national bank[s]. . . . The third position is that whether HOLA preemption applies depends on whether the claims arise from actions taken by the federal savings association or from actions taken by the national bank. Under the third line of cases, only those claims arising from actions taken by the federal savings association would be subject to a HOLA preemption analysis. If the loan is later sold to a national bank and the plaintiff's claims arise from actions taken by the national bank, those claims would not be subject to a HOLA preemption analysis.

No. 5:13-CV-02411-EJD, 2014 WL 129262, at *4 (N.D. Cal. Jan. 14, 2014).[3]

---

[3] In some instances, courts have also held that "where the terms of a loan expressly incorporate federal regulations governing federal savings associations, those regulations apply to the conduct

10

According to Chase, most district courts in this Circuit take the first position.[4] *See* Mot. at 10. Indeed, this Court ruled in 2012 that claims regarding loans that originated with a federal savings bank were "still generally covered by HOLA," even if they were subsequently controlled by a national bank. *Castillo v. Wachovia Mortg.*, No. C-12-0101 EMC, 2012 WL 1213296, at *5 (N.D. Cal. Apr. 11, 2012) (Chen, J.) (observing that "Courts have held that a successor entity may properly assert HOLA preemption even if the successor entity is not a federally chartered savings bank"). But Plaintiffs respond that the authorities relied on by Chase are outdated, and that "the

---

of a successor to the loan, even where the successor is not a federal savings association." *Romero v. Wells Fargo Bank, N.A.*, No. LACV1504707JAKJEMX, 2015 WL 12781210, at *5 (C.D. Cal. Dec. 22, 2015). However, the loan agreements in this case provide that the loan "shall be governed by federal law *and* the law of the jurisdiction in which the Property is located," Docket No. 38-2 at 12 (emphasis added), so this analysis is not dispositive.

In addition, one recent case cited by neither party declined to apply HOLA preemption on a different rationale to those summarized in *Kenery*. In *Smith v. Flagstar Bank, FSB*, the court determined that Dodd-Frank, which "effectively dissolved the OTS" and "creat[ed] a uniform body of law to govern all federal financial regulatory agencies," is now the controlling law when it comes to preemption. No. C 18-02350 WHA, 2018 WL 3995922, at *2 (N.D. Cal. Aug. 21, 2018). Dodd-Frank modified the preemption scheme such that "[a]ny determination by a court . . . regarding the relation of State law to a provision of this chapter or any regulation or order prescribed under this chapter shall be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of State law." 12 U.S.C. § 1465(a). And since "*Lusnak* held that the National Bank Act that then governed national banks via the Office of the Comptroller of the Currency, did not preempt Section 2954.8," the Dodd-Frank reform means that the same conclusion holds for HOLA and federal savings banks. *Id.* (citing *Lusnak*, 883 F.3d at 1197). However, *Smith* does not contend explicitly with a Dodd-Frank provision instructing that "[t]his title . . . shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by . . . the Director of [OTS] *regarding the applicability of State law under Federal banking law to any contract entered into on or before July 21, 2010, by national banks, Federal savings associations*." 12 U.S.C. § 5553 (emphasis added). This provision on its face preserves the application of the original HOLA preemption scheme established by OTS at 12 C.F.R. § 560.2 to contracts, such as the mortgage agreement between Plaintiffs and Chase here, entered into before July 21, 2010. Therefore, the reasoning of *Smith* does not apply in this case.

[4] Chase also cites *Flagg v. Yonkers Savings & Loan Association, FA*, 396 F.3d 178 (2d Cir. 2005), in support. In *Flagg*, the Second Circuit did not directly address the merits of the preemption question. The district court below had held that a New York law requiring lending institutions to credit mortgagors for interest on mortgage escrow accounts was preempted by 12 C.F.R. § 560.2(b)(6), a ruling that was not challenged on appeal. *See Flagg*, 396 F.3d at 182. But *Flagg* concerned a federal savings association, so does not speak to whether the preemptive effect of HOLA extends to national banks. *See id.* at 181.

11

virtually universal trend in this circuit in the last four years is for district courts" to adopt the third position. Opp. at 6; *see, e.g.*, *Grigsby v. Wells Fargo Bank, N.A.*, No. CV 17-9249-GW(ASX), 2018 WL 1779338, at *8 (C.D. Cal. Apr. 12, 2018); *Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1118 (D. Haw. 2018); *Davis*, 2016 WL 7116681, at *7; *Chu v. Fay Servicing, LLC*, No. 16-CV-04530-KAW, 2016 WL 5846990, at *3 (N.D. Cal. Oct. 6, 2016); *Pimentel*, 2015 WL 2184305, at *3; *Penermon*, 47 F. Supp. 3d at 995; *Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107 (N.D. Cal. 2013).

Having surveyed the case law and considered the parties' supplemental briefing on the legislative history of HOLA, the Court concludes, notwithstanding its earlier decision in *Castillo*, that the third position represents the current trend of court rulings[5] and is the most persuasive; thus, "HOLA preemption [applies] only to conduct occurring before the loan changed hands from the federal savings association or bank to the entity not governed by HOLA." *Rijhwani*, 2014 WL 890016, at *7. While it is true that many pre-2015 decisions went the other way,[6] in most of those cases "the plaintiffs either failed to argue otherwise or conceded the issue," with the result that "the courts simply concluded, without much analysis, that HOLA preemption applied." *Penermon*, 47 F. Supp. 3d at 994 (citation and internal quotation marks omitted); *Pimentel*, 2015 WL 2184305, at *3 (N.D. Cal. May 7, 2015) ("[T]hese cases do not appear to have grappled in a substantive way with the question of whether HOLA preemption extends to claims against a national bank based on its own conduct that post-dates its merger with a federally chartered savings bank . . . ."). In recent years, after more thoroughly considering the question, "[a] growing number of courts . . . have found that HOLA preemption applies after a[] [federal savings association]'s

---

[5] In contrast, at the time this Court decided *Castillo*, it was "unable to locate any cases" deviating from the first position. 2012 WL 1213296, at *5.

[6] Chase points out that some recent decisions continue to so hold. *See, e.g.*, *Heagler v. Wells Fargo Bank, N.A.*, No. 216CV01963MCEKJN, 2017 WL 1213370, at *4 (E.D. Cal. Mar. 31, 2017); *Chavez v. Wells Fargo Bank, N.A.*, No. CV 16-1402 PA (PLAx), 2016 U.S. Dist. LEXIS 86850, at *12–13 (C.D. Cal. July 5, 2016); *Houman v. Wells Fargo Bank, N.A.*, No. CV1508740ABPLAX, 2016 WL 7444869, at *5 (C.D. Cal. Feb. 5, 2016). The Court respectfully disagrees with the holdings in these cases.

merger with a national bank only to claims arising from the conduct of the [federal savings association]." *Davis*, 2016 WL 7116681, at *6; *see id.* at *6 & n.4 (citing numerous cases). This line of cases reflects the courts' increasing recognition that "HOLA was intended to ensure the stability of federal savings and loan associations, not to protect national banks from liability for their own conduct." *Id.* at *7.

The emerging line of cases is persuasive for several reasons. First, "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *City of Columbus v. Ours Garage & Wrecking Service, Inc.*, 536 U.S. 424, 438 (2002) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Claims "rooted in California's consumer-protection laws[] fall in an area that is traditionally within the state's police powers to protect its own citizens." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011); *see Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 828 (1st Cir. 1992) ("[T]he state statute here at issue visits two areas which are squarely within the ambit of the states' historic powers . . . banking . . . and consumer protection."). And while "the presumption against preemption is [generally] not applicable in the realm of national bank regulation" because of the "history of significant federal presence in national banking," *Aguayo*, 653 F.3d at 917 n.1 (citation omitted), congressional intent remains the "ultimate touchstone" of preemption inquiry, *Medtronic*, 518 U.S. at 485. Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *de la Cuesta*, 458 U.S. at 152–53.

It is not clear from either the language or legislative history of HOLA that Congress intended the Act's preemptive effect to attach to a loan even after it is sold by a federal savings association. The parties do not seriously dispute that at the time HOLA was enacted in 1933, nothing in its text or legislative history expressly indicated Congress expected that federal savings associations would sell their residential mortgage loans on a secondary market to entities not governed by HOLA, much less intended for HOLA preemption to attach to any such loans. *See* Docket No. 52 at 1 (Chase conceding that "Congress did not discuss the sale of HOLA-governed loans" when enacting HOLA in 1933). It was not until 1938 that Congress created the Federal

National Mortgage Association ("Fannie Mae") to purchase mortgage loans from federal savings associations to resell to investors. Shelley Smith, *Reforming the Law of Adhesion Contracts: A Judicial Response to the Subprime Mortgage Crisis*, 14 Lewis & Clark L. Rev. 1035, 1065 (2010). It is no surprise that the legislative history is devoid of any references to a secondary market for mortgage loans and of any expressed intent for HOLA to govern the operations of entities other than federal savings associations. *See Penermon*, 47 F. Supp. 3d at 995 ("[I]t is unlikely that HOLA contemplated the . . . mortgage crisis" that started in December 2007 "and the resulting mergers of federal savings banks into national banks or loan servicing as it exists today."). Generally, "HOLA is strictly limited to federal savings institutions and is not intended to affect the operations of national banks," and "OTS only regulates federal savings associations." *Id.* at 993–94 (citing 12 C.F.R. § 560.2).

Chase points to a number of legislative and regulatory actions taken after HOLA was enacted as evidence that "Congress has long recognized the power of federal [savings associations] to sell residential mortgage loans." Docket No. 52 at 5. Specifically, the predecessor agency to OTS "promulgated regulations as early as 1938 recognizing the ability of federal [savings associations] to sell mortgage loans"; Congress in 1970 enacted the Federal Home Loan Mortgage Corporation Act to authorize Freddie Mac to purchase and sell residential mortgages from any Federal home loan bank; and Congress in 1978 amended HOLA to affirm the ability of federal savings associations to sell mortgage loans. *See id.* at 2–4. A statute's subsequent amendment and its legislative history may be entitled to some limited weight in construing the earlier law, *In re Adams*, 761 F.2d 1422, 1426 (9th Cir. 1985), but generally "the views of subsequent Congresses cannot override the unmistakable intent of the enacting one," *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980). The problem for Chase is that even if Congress and OTS, subsequent to HOLA's enactment, contemplated federal savings associations' selling of mortgage loans in the secondary market, there is no indication in the subsequent legislative history that Congress intended HOLA preemption to continue to apply to loans sold to non-HOLA entities.

Second, finding preemption here would "run[] afoul of one of the original purposes of

14

HOLA enactment: consumer protection." *Penermon*, 47 F. Supp. 3d at 995. "Congress enacted HOLA to regulate savings associations or banks 'at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent.'" *Id.* at 990 (quoting *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008)). The legislative history makes clear that the goal of HOLA and its implementing regulations was to "encourage lending" and "ensure stability in federal savings loans" while providing "consumer protection." *Id.* at 995. If HOLA indeed gave national banks a preemption defense for any loan that originated with a federal savings bank, then homeowners would be deprived of state law protections "based solely on their original lender" and national banks would be allowed to "engag[e] in the otherwise illegal conduct." *Id.* at 995. The Act was designed to "provide emergency relief with respect to home mortgage indebtedness" and "provide for the relief of the man who is about to lose his home." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159, 164 (1982) (quoting H.R. Conf. Rep. No. 210, 73d Cong., 1st Sess., 1 (1933)). It was "not enacted to provide a defense to actions that would otherwise violate consumer protection laws." *Penermon*, 47 F. Supp. 3d at 995. Allowing preemption may run contrary to HOLA's purpose and "could result in a gross miscarriage of justice." *Id.*

Chase argues that extending HOLA preemption to loans acquired by national banks "provides continuity and certainty that increases the marketability of thrift-originated loans on the secondary market," in part because, in the event a federal savings bank fails, a purchasing bank can "take stock . . . of the exposure it is accruing upon its assumption of the failed bank's liabilities." Mot. at 12–13. Although one of the goals of HOLA is to "ensure the stability of federal thrifts," *Penermon*, 47 F. Supp. 3d at 990, nothing in the record before the Court suggests that requiring national banks to comply with state laws such as the escrow interest law here would threaten the stability of the secondary mortgage loan market for federal savings associations. At most, non-preemption would make the loans slightly less attractive to prospective buyers, putting them on a par, in terms of regulation, with national bank loans. Nothing suggests exposure to state regulations undermines the secondary market for loans originating under the NBA.

Accordingly, HOLA does not preempt § 2954.8(a) with respect to Plaintiffs' loans.

D. <u>Stay Pending Resolution of *Lusnak*</u>

In the event the Court denies the motion to dismiss, Chase requests a stay of the case pending the Supreme Court's resolution of *Lusnak*. The Supreme Court denied the petition for writ of certiorari on November 19, 2018, so this issue is now moot. *See Lusnak v. Bank of America, N.A.*, 883 F.3d 1185 (9th Cir. 2018), *cert. denied*, (U.S. Nov. 19, 2018) (No. 18-212).

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED** and the motion to stay is **DENIED as moot**.

This order disposes of Docket No. 38.

**IT IS SO ORDERED**.

Dated: December 7, 2018

_____
EDWARD M. CHEN
United States District Judge